UNITED STATES BANKRUPTCY COURT OF THE
WESTERN DISTRICT OF OKLAHOMA

IN RE:   BRYCE KELLY BARFIELD,     )
                                    )   Case No. 14-12943 JDL
         Debtor.                    )   Chapter 13

**MOTION TO ALLOW SALE OF HOME LOCATED AT 142 LINDSEY RD., BIG SANDY, TEXAS, WITH BRIEF COMBINED, WITH NOTICE OF OPPORTUNITY FOR HEARING, NOTICE OF TIME SET FOR HEARING AND NOTICE OF PROPOSED PRIVATE SALE OF PROPETY PURSUANT TO F.R.B.P 6004(a)**

   COMES NOW the Debtor, Bryce K. Barfield, by and through counsel, James E. Palinkas, pursuant to F.R.B.P. 6004 L.R. 6004(a) and L.R. 2002, and for his Motion To Allow Sale Of Home Located At 142 Lindsey Rd., Big Spring, TX, would offer the following in support thereof:

1. That on or about July 16, 2014, the debtor filed a Chapter 13 petition for relief, which was subsequently confirmed as a 60-month Plan paying 100% to the unsecured creditors.

2. That the debtor is currently the owner of a home located at 142 Lindsey Rd., Big Spring, Texas, which the debtor had listed as a $123,000 home based upon a 2007 appraisal at the time of purchase.  The debtor owes Beneficial Finance at the current principal balance of approximately $95,000 at 10.392 APR.  142 Lindsey Rd. has a total of 3.2 acres, MOL.

3. That the market is such that the rent collected by the debtor for said home is a bit less than the mortgage payment, hence the debtor is renting at a bit of a loss each month.

4. That the debtor attempted to refinance the home both in 2009 and in 2012, all to no avail.

5. That since the debtor purchase the subject property in 2007 the real estate market in east Texas has softened and market values have come down.

6. That the debtor tried to sell the home in 2008 through Judy Crowley, Century 21, Holly Lake, TX, for $105,000, with only minimal interest in the home from buyers and receiving no offers to buy.

7. That the debtor signed a listing agreement with Monte Smith of Century 21 in April of 2009, again with no offers to buy.

8. That the debtor signed a listing agreement with Lisa Ridgeway on April 28 of 2010, again with no offers to buy.

9. That the debtor signed a listing agreement with Mandi Sorrells in May of 2011, lowering the price to $99,000, again with virtually no interest in the home.

10. That the debtor took the home off the market in May of 2012 and began again to qualify for refinance. The debtor could not refinance, as this home was no longer his primary residence and was now viewed as a second home and/or investment property.

11. That the home is currently listed with Shayne Wilson at Coldwell Banker. There has been some recent interest in the home. The home is listed at $99,000, based upon a market analysis comparing comparable, recent home sales in the area.

12. That the home is listed as being sold with 2.1+ acres and that the other 1.1+ acres will be separated at the time of the sale and sold as separate property to the debtor's father for $7,500, if the Court approves.

13. That after the cost of the sale to Jacob Russell, closing expenses and paying off the principal balance to Beneficial, there will be a short-fall of approximately $7,500 on the principal balance to Beneficial, which will be made up by a sale of the 1.1+ unimproved acres to the debtor's father, Kelly Barfield. This same 1.1+ acres was a gift from debtor's father to the debtor in 2007 when the debtor first financed the purchase of the home and said 1.1+ acres runs adjacent to the debtor's father's land at 132 Lindsey Rd., Big Sandy, TX. The debtor paid nothing for said 1.1+ acres and said 1.1+ acres also holds a 20' X 20' building, built by debtor's father, Kelly Barfield, in which debtor's brother has his hair salon business.

14. That the debtor received a proposed sales contract for $99,150 from Jacob Russell, attached, for the 2.1+ acres, which will leave $7,500 to be paid by debtor's father for the 1.1+ acres in order to pay off Beneficial's principal balance, entirely, and obtain a complete mortgage release.

15. That If the Court Orders that the debtor should be allowed to sell 142 Lindsay Rd., Big Spring, TX, then the closing shall be conducted on April 21, 2015.

**WHEREFORE**, premises considered, the debtor prays for an Order allowing him to proceed with the sale of 142 Lindsey Rd., Big Sandy, TX, as described above, and for such other and further relief as the Court may deem just and proper.

## NOTICE OF OPPORTUNITY FOR HEARING

**Your rights may be affected. You should read this document carefully and consult your attorney about your rights and the effect of this document.** If you do not want the Court to grant the requested relief, or you wish to have your views considered, you must file a written response or objection to the requested relief with the Clerk of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102 no later than twenty-one (21) days from the date of filing of this request for relief. You should also serve a file stamped copy of your response or objection to the undersigned movant/movant's attorney [and others who are required to be served] and file a certificate of service with the Court. If no response or objection is timely filed, then the Court may grant the requested relief without a hearing or further notice.

**The twenty-one (21) day period included the three (3) days allowed for mailing provided for in Bankruptcy Rule 9006(f).**

## NOTICE OF HEARING

**NOTICE OF HEARING:** Notice is hereby given that if a response to the Debtor's Motion to Sell 142 Lindsey Rd., Big Spring, TX is filed, the hearing on the matter will be held on April 14, 2015, at 2:00 p.m., before the honorable Janice Loyd, bankruptcy court judge, in the 2nd floor courtroom of the United States Bankruptcy Court for the Western District of Oklahoma, 215 Dean A. McGee Ave., Oklahoma City, OK 73102. If no response is timely filed and the court grants the requested relief prior to the above-referenced hearing date, the hearing will be stricken from the docket of the Court.

/s/ James E. Palinkas
JAMES E. PALINKAS, OBA #15037
Attorney for Debtors
318 N. Broadway
Shawnee, OK 74801
(405) 275-0216
(405) 275-0286
jim@jepalinkas.com

## CERTIFICATE OF MAILING

This is to certify that on the date of filing this document as document number 32, notice of the above Motion to Approve Sale of 142 Lindsey Rd., Big Spring, TX, was electronically delivered to the chapter 13 Trustee at 13trustee@chp13okc.com, & the U.S. Trustee at Ustpregion20.oc.ecf@usdoj.gov, using the Court's CM/ECF system.

Further, that on the date of filing I mailed a true and correct copy of the above Motion to Approve Sale of 142 Lindsey Rd., Big Spring, TX by first-class, U.S. Mail, postage prepaid to the interested parties listed below, the debtor and all interested parties listed on the attached creditor's matrix.

HSBC Mortgage Services, Inc.
P.O. Box 21188
Eagan, Minnesota 55121

LynAlise K. Tannery
Buckley Madole, P.C.
P.O. Box 9013
Addison, TX 75001

Beneficial Texas, Inc.
1809 W. Loop 281
Longview, TX 75604

John W. Mee III (Commerce Bank)
MEE MEE HOGE & EPPERSON PLLP
50 Penn Place
1900 NW Expressway, Ste. 1400
OKC, OK 73118

Robert Hauge (Beneficial)
BAER, TIMBERLAKE, COULSON & CATES, P.C.
6846 S. Canton Ave., Ste. 100
Tulsa, OK 74136

/s/ James E. Palinkas
JAMES E. PALINKAS

| | | |
|---|---|---|
| Label Matrix for local noticing<br>1087-5<br>Case 14-12943<br>Western District of Oklahoma<br>Oklahoma City<br>Sat Mar 21 18:09:14 CDT 2015 | BENEFICIAL FINANCIAL I INC.<br>Baer, Timberlake, Coulson & Cates P.C.<br>c/o Robert Hauge<br>6846 S. Canton Ave<br>Suite 100<br>Tulsa, OK 74136-3413 | Commerce Bank<br>John W. Mee III<br>Mee Mee Hoge & Epperson PLLP<br>50 Penn Place<br>1900 NW Expressway, #1400<br>Oklahoma City, OK 73118-1801 |
| Oklahoma Employment Security Commission<br>PO Box 53039<br>Oklahoma City, OK 73152-3039 | Oklahoma Tax Commission<br>Legal Division<br>120 N Robinson Suite 2000W<br>Oklahoma City, OK 73102-7801 | USBC Western District of Oklahoma<br>215 Dean A. McGee<br>Oklahoma City, OK 73102-3426 |
| Barclays Bank Delaware<br>Attn: Bankruptcy<br>P.O. Box 8801<br>Wilmington DE 19899-8801 | Beneficial/hfc<br>Po Box 9068<br>Brandon FL 33509-9068 | (c)CAC FINANCIAL<br>2601 NW EXPRESSWAY STE 1000E<br>OKLAHOMA CITY OK 73112-7236 |
| CERASTES, LLC<br>C O WEINSTEIN, PINSON AND RILEY, PS<br>2001 WESTERN AVENUE, STE 400<br>SEATTLE, WA 98121-3132 | Cap One<br>Po Box 30253<br>Salt Lake City UT 84130-0253 | Capital 1 Bank<br>Attn: Bankruptcy Dept.<br>Po Box 30285<br>Salt Lake City UT 84130-0285 |
| Chase<br>Po Box 15298<br>Wilmington DE 19850-5298 | (p)CITIBANK<br>PO BOX 6043<br>SIOUX FALLS SD 57117-6043 | Commerce Bank<br>PO 419248 KCILC<br>Kansas City MO 64141-6248 |
| Commerce Bank<br>PO Box 419248 kcrec-10<br>KAnsas City MO 64141-6248 | Commerce Bank Kansas<br>Po Box 419248 Kcrec-10<br>Kansas City MO 64141-6248 | ECAST SETTLEMENT CORPORATION, ASSIGNEE<br>OF CITIBANK (SOUTH DAKOTA), N.A.<br>POB 29262<br>NEW YORK, NY 10087-9262 |
| FNCC/Legacy Visa<br>Attn: Bankruptcy<br>Po Box 5097<br>Sioux Falls SD 57117-5097 | GECRB/Care Credit<br>Attn: bankruptcy<br>Po Box 103104<br>Roswell GA 30076-9104 | Gemb/walmart<br>Attn: Bankruptcy<br>Po Box 103104<br>Roswell GA 30076-9104 |
| HSBC MORTGAGE SERVICES, INC.<br>P.O. BOX 21188<br>EAGAN, MINNESOTA 55121-0188 | IRS-Isolvency Section<br>P.O. Box 7346<br>Philadelphia PA 19101-7346 | Oklahoma Tax Commission<br>Legal Div. - Bankruptcy Section<br>120 N. Robinson, Ste. 2000W<br>Oklahoma City OK 73102-7801 |
| (p)PORTFOLIO RECOVERY ASSOCIATES LLC<br>PO BOX 41067<br>NORFOLK VA 23541-1067 | Sams Club / GEMB<br>Attention: Bankruptcy Department<br>Po Box 103104<br>Roswell GA 30076-9104 | Southwestern Bell Telephone Company<br>% AT&T Services, Inc<br>Karen Cavagnaro, Paralegal<br>One AT&T Way, Room 3A104<br>Bedminster, NJ 07921-2693 |
| (p)SPRINGLEAF FINANCIAL SERVICES<br>P O BOX 3251<br>EVANSVILLE IN 47731-3251 | St. Anthony Hospital<br>1102 w. MacArthur<br>Shawnee OK 74804-1743 | U.S. Trustee<br>United States Trustee<br>215 Dean A. McGee Ave., 4th Floor<br>Oklahoma City, OK 73102-3444 |

```
Valir                          Bryce Kelly Barfield            James E. Palinkas
1901 N. Cornwell               P.O. Box 3762                   J.E. Palinkas, P.C.
Yukon OK 73099                 Shawnee, OK 74802-3762          318 N. Broadway
                                                               Shawnee, OK 74801-6920


John T. Hardeman
PO Box 1948
Oklahoma City, OK 73101-1948
```

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
Citibank Sd, Na                       Portfolio Recovery Associates, LLC    Springleaf Financial S
Citi Corp Credit Services/Attn:Centraliz    POB 41067                       2426 N Harrison
7920 Nw 110th St                      Norfolk VA 23541                      Shawnee OK 74804
Kansas City MO 64195


(d)Springleaf Financial Services
P.O. Box 3251
Evansville, IN 47731-3251
```

Addresses marked (c) above for the following entity/entities were corrected as required by the USPS Locatable Address Conversion System (LACS).

```
CAC Financial                   End of Label Matrix
2601 Nw Expressway Suite 1000   Mailable recipients    33
Oklahoma City OK 73112          Bypassed recipients     0
                                Total                  33
```

4-28-2014

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
## ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)
NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are _____ Bryce ~~Brice~~ Barfield _____
   (Seller) and _____ Jacob S. Russell _____ (Buyer).
   Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the "Property".
   A. LAND: Lot _____ Block _____, 2.5ac Out of ABS A492 Trt 35-5
      Addition, City of _____ Big Sandy _____, County of _____ Upshur _____,
      Texas, known as _____ 142 Lindsey _____ 75755
      (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.
   C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: None

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ............... $ 0.00
   B. Sum of all financing described below (excluding any loan funding fee or mortgage insurance premium) ........................ $ 99,150.00
   C. Sales Price (Sum of A and B) ........................... $ 99,150.00

4. **FINANCING (Not for use with reverse mortgage financing):** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
   ☒ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of $ 99,150.00 (excluding any loan funding fee or mortgage insurance premium).
      (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s) (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.
      (2) Credit Approval: (Check one box only)
         ☒ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.
         ☐ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
   ☐ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
   ☐ C. SELLER FINANCING: A promissory note from Buyer to Seller of $ _____, secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

TAR 1601    Initialed for identification by Buyer JR and Seller BB    TREC NO. 20-12

Coldwell Banker Lenhart, 1100 Judson Rd., Ste 400 Longview, TX 75601    Phone: 903 753-2637    Fax: 903 753-6667
Mike Baldridge    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Jacob Russell

Contract Concerning ___142 Lindsey___
___Big Sandy, Tx  75755___   Page 2 of 9   4-28-2014
(Address of Property)

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit $_____ as earnest money with ___US Title, Gilmer___, as escrow agent, at ___217 W. Tyler St, Gilmer, Tx 75644___ (address). Buyer shall deposit additional earnest money of $ ___800.00___ with escrow agent within ___10___ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**
  A. TITLE POLICY: Seller shall furnish to Buyer at [X] Seller's [ ] Buyer's expense an owner policy of title insurance (Title Policy) issued by ___US Title, Gilmer___ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
    (1) Restrictive covenants common to the platted subdivision in which the Property is located.
    (2) The standard printed exception for standby fees, taxes and assessments.
    (3) Liens created as part of the financing described in Paragraph 4.
    (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
    (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
    (6) The standard printed exception as to marital rights.
    (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
    (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements: [ ] (i) will not be amended or deleted from the title policy; [X] (ii) will be amended to read, "shortages in area" at the expense of [ ] Buyer [X] Seller.
  B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to factors beyond Seller's control, the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
  C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)
    [ ] (1) Within _____ days after the effective date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date. If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at [ ] Seller's [ ] Buyer's expense no later than 3 days prior to Closing Date.
    [X] (2) Within ___10___ days after the effective date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
    [ ] (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
  D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than Items 6A(1) through (7) above; disclosed in the Commitment other than Items 6A(1) through (8) above; or which prohibit the following use or activity: ___Residential___

Buyer must object the earlier of (i) the Closing Date or (ii) ___7___ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender

TAR 1601   Initialed for identification by Buyer _JR_ and Seller _____   TREC NO. 20-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   Jacob Russell

Contract Concerning _____142 Lindsey_____
_____Big Sandy, Tx 75755_____ Page 3 of 9  4-28-2014
(Address of Property)

within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:
  (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
  (2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐ is ☒ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**
  Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.
  **If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**
  (3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
  (4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.
  (5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.
  (6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

TAR 1601    Initialed for identification by Buyer ___JR___ and Seller _____    TREC NO. 20-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      Jacob Russell

Contract Concerning _____142 Lindsey_____
_____Big Sandy, Tx 75755_____ Page 4 of 9  4-28-2014
(Address of Property)

(7) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) **TRANSFER FEES:** If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) **PROPANE GAS SYSTEM SERVICE AREA:** If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

7. **PROPERTY CONDITION:**
    A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
    B. **SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):**
        (Check one box only)
        ☒ (1) Buyer has received the Notice.
        ☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
        ☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.
    C. **SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** is required by Federal law for a residential dwelling constructed prior to 1978.
    D. **ACCEPTANCE OF PROPERTY CONDITION:** "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
        (Check one box only)
        ☒ (1) Buyer accepts the Property As Is.
        ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the the following specific repairs and treatments: _____
        (Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)
    E. **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
    F. **COMPLETION OF REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.
    G. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the

TAR 1601    Initialed for Identification by Buyer __LR__ and Seller __WERE__    TREC NO. 20-12
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    Jacob Russell

Contract Concerning ___142 Lindsey Big Sandy, Tx 75755___ Page 5 of 9 4-28-2014
(Address of Property)

Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. **RESIDENTIAL SERVICE CONTRACTS:** Buyer may purchase a residential service contract from a residential service company licensed by from TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ __425.00__. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**
   A. The closing of the sale will be on or before ___April 20___, ___2015___, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
   B. At closing:
      (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
      (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
      (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
      (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
      (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has received the security deposit and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**
    A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your Insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.
    B. Leases:
      (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
      (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

12. **SETTLEMENT AND OTHER EXPENSES:**
    A. The following expenses must be paid at or prior to closing:
       (1) Expenses payable by Seller (Seller's Expenses):
          (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
          (b) Seller shall also pay an amount not to exceed $ __2,800.00__ to be applied in the

TAR 1601 Initialed for identification by Buyer ___JB___ and Seller _____ TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Jacob Russell

Contract Concerning __142 Lindsey Big Sandy, Tx 75755__ Page 6 of 9  4-28-2014
(Address of Property)

following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; adjusted origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

13. **PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

14. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

15. **DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16. **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**
A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.
C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of

TAR 1601   Initialed for identification by Buyer _____ and Seller _____   TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com   Jacob Russell

Contract Concerning ____142 Lindsey_____
_____Big Sandy, Tx   75755_____   Page 7 of 9  4-28-2014
(Address of Property)

the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

To Buyer at: 2073 FM 2011 # 52          To Seller at: _____
Longview, Tx 75603                       _____

Telephone: (214) 773-9680                Telephone: _____
Facsimile: _____        Facsimile: _____

E-mail: _____           E-mail: _____

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

[X] Third Party Financing Addendum for Credit Approval
[ ] Seller Financing Addendum
[ ] Addendum for Property Subject to Mandatory Membership in a Property Owners Association
[ ] Buyer's Temporary Residential Lease
[ ] Loan Assumption Addendum
[ ] Addendum for Sale of Other Property by Buyer
[ ] Addendum for Reservation of Oil, Gas and Other Minerals
[ ] Addendum for "Back-Up" Contract
[ ] Addendum for Coastal Area Property

[ ] Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
[ ] Seller's Temporary Residential Lease
[ ] Short Sale Addendum
[ ] Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
[ ] Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
[ ] Addendum for Property in a Propane Gas System Service Area
[ ] Other (list): _____

TAR 1601    Initialed for identification by Buyer __J.R.__ and Seller (INITIAL HERE)    TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Jacob Russell

Contract Concerning __142 Lindsey Big Sandy, Tx 75755__ Page 8 of 9  4-28-2014
(Address of Property)

23. **TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ __50.00__ (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within __10__ days after the effective date of this contract (Option Period). If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee [X] will [ ] will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

24. **CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate licensees from giving legal advise. READ THIS CONTRACT CAREFULLY.

Buyer's Attorney is: __Buyer's Choice__

Seller's Attorney is: ____

Telephone: ____
Facsimile: ____
E-mail: ____

Telephone: ____
Facsimile: ____
E-mail: ____

EXECUTED the ____ day of ____, 20 ____ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer __Jacob S. Russell__

Seller ~~Brice~~ Barfield
       Bryce

Buyer

Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-12. This form replaces TREC NO. 20-11.

TAR 1601

TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Jacob Russell

Case: 14-12943   Doc: 32-2   Filed: 03/21/15   Page: 9 of 12

Contract Concerning __142 Lindsey / Big Sandy, Tx 75755_____ Page 9 of 9   4-28-2014
(Address of Property)

## BROKER INFORMATION
(Print name(s) only. Do not sign)

**Other Broker Firm:** Coldwell Banker Lenhart   License No. _____
represents  [X] Buyer only as Buyer's agent
            [ ] Seller as Listing Broker's subagent

**Listing Broker Firm:** Coldwell Banker Lenhart   License No. _____
represents  [ ] Seller and Buyer as an intermediary
            [ ] Seller only as Seller's agent

Name of Associate's Licensed Supervisor: Jack Lenhart   Telephone: (903) 753-0447

Associate's Name: _M. Baldridge_ (signature)   Telephone: (903) 812-2837

Listing Associate's Name: _____   Telephone: _____

Other Broker's Address: 1100 Judson Rd Suite 400   Facsimile: (903) 581-2856

Listing Broker's Office Address: _____   Facsimile: _____

City: Longview,   State: Tx   Zip: 75601

City: _____   State: Tx   Zip: _____

Associate's Email Address: MBaldridge@yahoo.com

Listing Associate's Email Address: _____

Selling Associate's Name: _____   Telephone: _____

Name of Selling Associate's Licensed Supervisor: _____   Telephone: _____

Selling Associate's Office Address: _____   Facsimile: _____

City: _____   State: _____   Zip: _____

Selling Associate's Email Address: _____

Listing Broker has agreed to pay Other Broker __3.000%__ of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $ _____ (Option Fee) in the form of _____ is acknowledged.

Seller or Listing Broker _____   Date _____

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of [ ] Contract and [ ] $ _____ Earnest Money in the form of _____ is acknowledged.
Escrow Agent: _____   Date: _____
By: _____
                                                Email Address _____
                                                Telephone: _____
Address _____                              Facsimile: _____
City _____ State _____ Zip _____

TAR 1601                                                                    TREC NO. 20-12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Jacob Russell

Case: 14-12943   Doc: 32-2   Filed: 03/21/15   Page: 10 of 12



2-10-2014

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

# THIRD PARTY FINANCING ADDENDUM FOR CREDIT APPROVAL
## (Not for use with Reverse Mortgage Financing)

TO CONTRACT CONCERNING THE PROPERTY AT

__142 Lindsey_____ __Big Sandy_____
(Street Address and City)

Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain credit approval for the financing (Credit Approval). Buyer shall furnish all information and documents required by lender for Credit Approval. Credit Approval will be deemed to have been obtained when (1) the terms of the loan(s) described below are available and (2) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history. If Buyer cannot obtain Credit Approval, Buyer may give written notice to Seller within ___21___ days after the effective date of this contract and this contract will terminate and the earnest money will be refunded to Buyer. If Buyer does not give such notice within the time required, this contract will no longer be subject to Credit Approval. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

NOTE: Credit Approval does not include approval of lender's underwriting requirements for the Property, as specified in Paragraph 4.A.(1) of the contract.

Each note must be secured by vendor's and deed of trust liens.

**CHECK APPLICABLE BOXES:**

☐ A. CONVENTIONAL FINANCING:
  ☐ (1) A first mortgage loan in the principal amount of $ _____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____ % of the loan.
  ☐ (2) A second mortgage loan in the principal amount of $ _____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____ % of the loan.

☐ B. TEXAS VETERANS LOAN: A loan(s) from the Texas Veterans Land Board of $ _____ for a period in the total amount of _____ years at the interest rate established by the Texas Veterans Land Board.

☐ C. FHA INSURED FINANCING: A Section _____ FHA insured loan of not less than $ _____ (excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____ % of the loan. As required by HUD-FHA, if FHA valuation is unknown, "It is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser (Buyer) has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ _____. The purchaser (Buyer) shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the

TAR 1901 2-10-2014   Initialed for identification by Buyer ___, ___ and Seller ___, ___   TREC NO. 40-6

Coldwell Banker Lenhart, 1100 Judson Rd. Ste 400 Longview, TX 75601
Phone: 903 812 2837   Fax: 903 753-6667   Mike Baldridge

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Jacob Russell

Third Party Financing Condition Addendum Concerning                                    Page 2 of 2  2-10-2014

142 Lindsey , Big Sandy, Tx  75755
(Address of Property)

appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The purchaser (Buyer) should satisfy himself/herself that the price and the condition of the Property are acceptable."

☒ D. **VA GUARANTEED FINANCING:** A VA guaranteed loan of not less than $ 99,150.00 (excluding any financed Funding Fee), amortizable monthly for not less than 30 years, with interest not to exceed 5.000 % per annum for the first 30 year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed 1.000 % of the loan.

**VA NOTICE TO BUYER:** "It is expressly agreed that, notwithstanding any other provisions of this contract, the Buyer shall not incur any penalty by forfeiture of earnest money or otherwise or be obligated to complete the purchase of the Property described herein, if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The Buyer shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs."

If Buyer elects to complete the purchase at an amount in excess of the reasonable value established by VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Price, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

☐ E. **USDA GUARANTEED FINANCING:** A USDA-guaranteed loan of not less than $ _____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____ % of the loan.

Buyer hereby authorizes any lender to furnish to the Seller or Buyer or their representatives information relating only to the status of Credit Approval of Buyer.

Buyer Jacob S. Russell                           Seller Brice Barfield
                                                        Bryce

Buyer                                             Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-6. This form replaces TREC No. 40-5.

TAR 1901 2-10-2014                                                                     TREC NO. 40-6

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                Jacob Russell



# TEXAS ASSOCIATION OF REALTORS®
## INTERMEDIARY RELATIONSHIP NOTICE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2004

To: ~~Brice~~ Bryce Barfield _____ (Seller or Landlord)
and Jacob S. Russell _____ (Prospect)
From: Coldwell Banker Lenhart _____ (Broker's Firm)
Re: 142 Lindsey
Big Sandy, Tx 75755 _____ (Property)
Date: March 10, 2015

A. Under this notice, "owner" means the seller or landlord of the Property and "prospect" means the above-named prospective buyer or tenant for the Property.

B. Broker's firm represents the owner under a listing agreement and also represents the prospect under a buyer/tenant representation agreement.

C. In the written listing agreement and the written buyer/tenant representation agreement, both the owner and the prospect previously authorized Broker to act as an intermediary if a prospect who Broker represents desires to buy or lease a property that is listed by the Broker. When the prospect makes an offer to purchase or lease the Property, Broker will act in accordance with the authorizations granted in the listing agreement and in the buyer/tenant representation agreement.

D. Broker [X] will [ ] will not appoint licensed associates to communicate with, carry out instructions of, and provide opinions and advice during negotiations to each party. If Broker makes such appointments, Broker appoints:

Shayne Wilson/Karla Ditto _____ to the owner; and
Mike Baldridge _____ to the prospect.

E. By acknowledging receipt of this notice, the undersigned parties reaffirm their consent for broker to act as an intermediary.

F. Additional information: (Disclose material information related to Broker's relationship to the parties, such as personal relationships or prior or contemplated business relationships.)

The undersigned acknowledge receipt of this notice

Seller or Landlord _____ Date    Prospect Jacob S. Russell _____ Date
~~Brice~~ Barfield
Bryce

Seller or Landlord _____ Date    Prospect _____ Date

(TAR-1409) 1-7-04

Page 1 of 1

Coldwell Banker Lenhart, 1100 Judson Rd. Ste 400 Longview, TX 75601
Phone: 903 812 2837    Fax: 903 753-6667    Mike Baldridge    Jacob Russell
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com